925 So.2d 622 (2006)
William MARKS
v.
NEW ORLEANS POLICE DEPARTMENT.
No. 2005-CA-0307.
Court of Appeal of Louisiana, Fourth Circuit.
February 8, 2006.
*623 Eric J. Hessler, Meridian, MS, Counsel for Plaintiff/Appellant.
Joseph V. Dirosa, Jr., Chief Deputy City Attorney, Sherry S. Landry, City Attorney, James B. Mullaly, Assistant City Attorney, New Orleans, Counsel for Defendant/Appellee.
(Court Composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS, Jr., and Judge LEON A. CANNIZZARO, Jr.)
MAX N. TOBIAS, JR., Judge.
This appeal arises from the termination of Sergeant William Marks ("Marks"), a New Orleans police officer with permanent status who drove a police cruiser owned by the New Orleans Police Department (hereafter, "NOPD" or "appointing authority") out of state to pick up two unauthorized civilian passengers. On the return trip, he was stopped by an Illinois State Police officer ("state trooper") for speeding. The NOPD ultimately suspended Marks for 75 days[1] for several violations including failure to adhere to the law (speeding), untruthfulness, lack of professionalism, abuse of position, transporting citizens, immoral conduct, and failure to perform duties. He was also terminated for an abuse of power for not reporting the incident to the NOPD and for asking the state trooper not to report the incident. Marks appeals the disciplinary action on the grounds that (a) he was suspended for violations not adequately proven at the hearing before the Civil Service Commission ("CSC"); (b) his termination was too severe a penalty for the conduct in question; and (c) the CSC failed to apply the time limit on investigations of police officers in violation of La. R.S. 40:2531, which is part of the Chapter 25 of the Louisiana Revised Statutes, titled "Rights of Law Enforcement Officers while Under Investigation" and commonly known as "The Louisiana Police Officer Bill of Rights." Because we find that the appointing authority violated R.S. 40:2531, we reverse the decision of the CSC.
On 1 November 2002, Marks commandeered a police cruiser from a subordinate officer to drive to Milwaukee, Wisconsin, to pick up his girlfriend, who was reportedly *624 ill. He had no personal vehicle of his own, and in a poor exercise of judgment, "borrowed" the police cruiser assigned to a subordinate officer who was on a hunting trip. He made the trip to Milwaukee, and picked up not only his girlfriend, but also a female acquaintance of hers who also wished to travel to New Orleans. On 2 November 2002, on his way back to Louisiana with the two women, Marks was stopped by a state trooper in Illinois and cited for speeding. During the stop, the state trooper learned that one of the women Marks was transporting had an outstanding warrant for her arrest for prostitution and that the other had prior arrests for narcotics and firearms violations. Further, his girlfriend's acquaintance, who was sitting in the back seat, had a loaded firearm with her in the vehicle. Marks told the state trooper that he was transporting the two women in the vehicle to New Orleans and that he did not know the identity of the woman in the back seat. The state trooper searched the vehicle and found the identification card of the unidentified passenger, as well as a stolen weapon in the trunk, and marijuana in the vehicle.[2] Marks asked the officer to extend him a professional courtesy and not report the stop to NOPD because he did not want to lose his job. The state trooper apparently refused.
The record reflects that the investigation into Marks' alleged transgressions commenced on 12 November 2002. On 13 January 2003, just beyond the 60-day mark, the investigating officer requested an extension of time to complete his investigation. However, no extension of time was requested from the Civil Service Commission.
On 1 July 2003, Sergeant Harrison brought the case to the District Attorney for the Parish of Orleans. On 1 July 2003, the matter was "refused" by the district attorneys' office and NOPD was notified of the refusal on 3 July 2003. On 12 August 2003, a complete report of the investigation was delivered to the Chief of Police, Superintendent Edwin P. Compass, III, and Marks was terminated on 2 October 2003 on the grounds of abuse of power for requesting that the state trooper not report the incident to the NOPD and further for allowing two civilians to be passengers in a police vehicle driven by Marks out of state in violation of the internal rules of the NOPD.
Marks appealed the suspension and termination to the CSC on the grounds that the investigation was not completed within 60 days as required by La. R.S. 40:2531. A hearing was held on 3 and 4 December 2003 before a hearing officer of the CSC. During the hearing, a videotape recording of the stop by the state trooper was played, and testimony was taken from Superintendent Compass, Marks, and the investigating officer. The hearing officer noted that the appeal was in part based upon violation of the 60-day rule, but indicated that he was not prepared or authorized to receive evidence on this issue. The hearing officer issued a decision upholding the 30-day suspension for taking the police cruiser out of state, but upheld Marks' appeal of the other suspensions and the termination on the grounds that the appointing authority had not adequately proven its case against Marks on the counts of lack of professionalism and abusing his authority. The hearing officer further found that Marks' actions did not *625 warrant termination and was quite troubled with the treatment of Marks and his passengers at the hands of the state trooper.
The CSC returned the appeal of this matter to the hearing officer to determine how La. R.S. 40:2531 applied to the case and whether noncompliance with the statute would have any effect on the merits of the disciplinary action against Marks. The hearing officer determined that, following a review of Bannister v. Department of Streets, 95-0404 (La.1/16/96), 666 So.2d 641, La. R.S. 40:2531 was directory and not mandatory in nature, and that failure to abide by the 60-day time limit on investigations was not fatal to the disciplinary action against Marks. He found that Marks was not prejudiced by an extended investigation. Marks' appeal was ultimately denied on 30 November 2004. Marks lodged an appeal of the CSC's ultimate decision with this court on 19 April 2005. He asserts that the evidence presented to the CSC was insufficient to warrant his suspension or termination; that his punishment was not commensurate with the charges against him; and, finally, that the NOPD violated La. R.S. 40:2531, which should have resulted in the dismissal of the disciplinary action against him.
The rights of law enforcement officers under investigation are codified in La. R.S. 40:2531, et seq. Of particular interest in this matter is La. R.S. 40:2531 B(7), which provides:
Except as otherwise provided in this Paragraph, each investigation of a law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days. However, in each municipality which is subject to a Municipal Fire and Police Civil Service law, the municipal police department may petition the Municipal Fire and Police Civil Service Board for an extension of the time within which to complete the investigation. The board shall set the matter for hearing and shall provide notice of the hearing to the officer who is under investigation. The officer who is under investigation shall have the right to attend the hearing and to present evidence and arguments against the extension. If the board finds that the municipal police department has shown good cause for the granting of an extension of time within which to complete the investigation, the board shall grant an extension of up to sixty days. Nothing contained in this Paragraph shall be construed to prohibit the law enforcement officer under investigation and the appointing authority from entering into a written agreement extending the investigation for up to an additional sixty days. Further, nothing in this Paragraph shall limit any investigation of alleged criminal activity. [Emphasis supplied.]
We interpreted the language of this statute in Davis v. New Orleans Police Department, 04-1023 (La.App. 4 Cir. 2/2/05), 899 So.2d 37, writ denied, 05-0941 (La.5/20/05), 902 So.2d 1057, holding that the NOPD's violation of the 60-day time limit for investigations was grounds for reversing the disciplinary action resulting from the investigation.
The appointing authority urges us to reconsider our holding in Davis that strictly construes the 60-day time limit to complete an investigation of a police officer. NOPD argues that the Davis decision is contrary to the law, in particular contrary to the Louisiana Supreme Court decision in Bannister v. Department of Streets, 95-0404 (La.1/16/96), 666 So.2d 641. For the reasons articulated in Davis, we disagree.
In Bannister, the Louisiana Supreme Court examined the language contained in *626 Civil Service Rule II, § 4.16 that provides, in pertinent part, that "[a]ppeals to the Commission shall be decided promptly, but in any event ninety (90) calendar days after . . . receipt by the Commission of the Hearing Officer's report and official transcript of the testimony of said hearing." The Court held that the 90-day directive was not mandatory, but rather directory, and that failure of the Commission to comply with the 90-day time limit would not automatically result in a reversal of an adverse decision to a civil servant. In particular, the Court held that if a law's purpose "is the protection of the government by guiding its officials rather than granting rights to affected private citizens, the word `shall' may be given merely directory meaning." Id. at p. 5, 666 So.2d at 646 (internal cites omitted). We find the facts of this case, as well as those of Davis, to be distinguishable from the facts presented in Bannister.
As we have noted, Bannister dealt with a civil service rule promulgated by the CSC that related "solely to the Commission's own actions." Davis, p. 5, 899 So.2d at 40. In contrast, La. R.S. 40:2531 was drafted by the Louisiana legislature to provide "minimum standards" for investigation of police officers and is obviously intended to protect the rights of those officers accused of malfeasance.
The appointing authority argues that adherence to the Davis decision would lead to "harshness and absurdity" because the 60-day time limit for investigations is unrealistic and sometimes impossible if there are numerous witnesses to interview or if the Commission must await the outcome of any investigation by the District Attorney's office, which could and frequently does take longer than 60 days. We do not find this argument persuasive. La. R.S. 40:2531 expressly provides that if an investigation will take longer than 60 days, mechanisms exist by which the appointing authority may request an extension for good cause for an additional 60 days. This was not done in this matter, and no argument is made that the appointing authority was somehow unable to make such a request; it simply failed to do so. We find that to allow the appointing authority to circumvent the "minimum standards" proscribed by the legislature to protect the "rights of law enforcement officers under investigation" would render the obvious intent of La. R.S. 40:2531 meaningless.
We recognize that the charges against Marks are serious in nature, but are bound by the language of La. R.S. 40:2531 and reverse the decision of the CSC.
For the foregoing reasons, the judgment of the CSC is reversed.
REVERSED.
NOTES
[1] Specifically, he received a ten-day suspension for speeding; a five-day suspension for unprofessionalism; a 30-day suspension for taking the vehicle out of state; and a 30-day suspension for untruthfulness.
[2] We note that the state trooper did not arrest Marks or file any charges related to the firearms or marijuana alleged to have been found in the vehicle and the district attorney of New Orleans declined to press any criminal charges against Marks. Therefore, the only bases of the disciplinary action taken against Marks are those charges enumerated supra.